Come to occupation center for the Korean invasion of the United States. Next case is Safeguard Base Operations versus the United States and B&O Joint Venture, 2019-11-60. Mr. Ginsberg. Thank you, your honors. May it please the court, this appeal presents this court with two important opportunities. The first is to resolve a split at the Court of Federal Claims and clarify a legal standard of great import to the government contracts community. We should go looking for issues rather than be deciding a case? Your honor, I think in this instance, the issue I'm referring to is the importance of the so-called Riley's wholesale factors, the Riley's factors. What we have is a clear split at the Court of Federal Claims. We have confusion among federal agencies and among contractors about the applicable standard. And what we see in the case law is a significantly different standard applied for the last 15 years. There's no actual relief we can give to your client at this point here, right? What you wanted to do was overcome the override of the stay, and there's no way we can grant that relief now. The GAO has come up with its recommendation. Any potential period for a stay you could enjoy is long gone. Well, your honor, let me let me address that. What you are ultimately asking us to do is issue some declaration declining on something where the underlying dispute has evaporated. I guess that's the concern I have. So I think you need to speak to mootness first. I'd be happy to. I think clearly, I'll start by saying clearly the exception to mootness capable of repetition evading review is very salient here. We have a 100-day period at GAO, and no appeal will ever reach this court and be decided. Yeah, but what if GAO recommended you get the contract? Then you could appeal the stay. There would be more than 100 days. Well, at that point, it still wouldn't be the seekest. According to the arguments of the defendant appellees, it still wouldn't be the stay would be appealing. It would be the relief offered by... No, you could appeal the stay at that point. I don't see that it is capable of repetition and evading review. We could review the Riley factors in a scenario in which the GAO recommended you to get the contract. That's not a slam dunk. You don't have it yet, so maybe you still do want a stay. I don't know. I understand. I think, again, it's not specifically the override determination. We'd be appealing potentially the relief granted or not granted by the court. In the view of the defendant appellees, this case became moot after 100 days, and that clearly can't be right. This court does have jurisdiction to hear an appeal of a CEGA override determination. GAO has already ruled in this case, so what relief could your client receive? Well, there are a couple of things. One is right now the merits of the underlying case are on appeal before this court. We expect that the merits will be remanded back to the Court of Federal Claims. And at that point, whether the override ever should have happened in the first place, we think, is going to be very relevant to the relief crafted by the court. Can you explain how? Because I can't think of any at the moment. I'll state it simply. If B&O, the intervener defendant appellee, never should have been performing all along, it has to be important to the Court of Federal Claims that B&O never should have been performing, should have been under an injunction. Let's play this out. Let's say there had never been an override and the stay hadn't been in place. And then the GAO issues the recommendation that it did issue, which is bid protesters wrong. So, you know, the contracting officer got it right. Isn't it? Then at that time, B&O could have started practicing the contract and you would be exactly where you are right now, appealing an adverse decision from the Court of Federal Claims to us, trying to convince us that the contracting officer got it wrong. Well, there's a big difference, Your Honor, because we would have had an injunction, presumably, or certainly would have asked for one and fought for one all along. So, I mean, a different contractor, presumably the incumbent contractor, not B&O, would have been performing. The status quo was inverted, as we've discussed in the briefs, by the SECA override, which we think was illegal. I don't understand how that harmed you or changed your rights. I think Judge Chen's example is the perfect one. And I don't see how that would have changed your rights or harmed your client. I don't see what relief we could give you. Well, again, Your Honor, either this court has jurisdiction over the appeal of a SECA override or it doesn't, or the appeal of a SECA override. And maybe we would had GAO not ruled against you. But they did. So now the whole stay issue is moot because there would no longer be a stay. There would no longer be anything if this had happened. Well, let me address one other practical issue in addition to this. The incumbent contractor is the 49% – the former incumbent contractor, before the status quo was overridden, is the 49% owner of the appellant in this case. So there was a concrete economic impact. No one cited a case in any of the briefs that say an economic harm to the 49% minority owner of a JV is not economic harm upon the joint venture. That's not harm to this party. That's a whole different party. So maybe that party would have standing to bring some sort of lawsuit complaining. But that's not the party involved in this case. Your Honor, I will say that – Is it? Again, the incumbent was the 49% owner of the current appellant. Which is a different company. It's a different entity. Correct. Okay. Different corporate entities have different meaning under the law. Your Honor, I'm trying to address the common sense economic impact that still affects the actual appellant in this case. But separately, we have a competitive injury – That's like saying if you're somebody's girlfriend, you should be able to bring a case that they should be able to bring because you'd benefit if they got the money. Your Honor, no one's addressed that case before in the briefs. But I understand your point. I think here what we have is we have a competitive injury based on the statute. And then separately, we have this practical economic impact. But focusing only on the question of mootness from the statutory perspective, somebody had a right – that is, appellant had a right – to appeal the SECA override. It should not matter to this court what happened at GAO. Otherwise, cases like this will forever be capable of repetition, evading review. I guess another concern I have is that what we have here is a decision to issue the override that's just very, very fact-bound. And it's not so clear to me that the decision-maker was employing some statutory interpretation or something like that, that we could say that it's very likely that the agency or the department is going to be employing this same statutory interpretation over and over and over again in future override decisions. And so, therefore, there's a distinction here with this fact-bound discretionary decision versus what we saw in Kingdomware, where the department there was making a very specific position on how to construe the rule of two. And so that's why I also wonder whether what you're arguing as a capable of repetition is less than clear here on this fact-bound kind of a discretionary decision. What I can tell you, Your Honor, is that if this decision is allowed to stand, federal agencies, particularly DHS, but I assume other federal agencies, will be extremely emboldened and empowered to override secret stays. In this case, by the way, we've got a clear statutory violation. We've got a determination and findings issued after the override was effected. In a DNF, the document that's supposed to announce and explain the reasons for an override was issued only after the court ordered it, that is, the Court of Federal Claims, ordered it to be issued. There was an effective override that took place over the weekend on a Sunday without notice. So that's a clear statutory violation because an agency can't override until it presents its reasons to GAO. And we also have several rationale for the override. In particular, let me tell you the quote-unquote most important reason for the override. I'm quoting from the DNF, which is Appendix 569 to 570. Most importantly, says the DNF, this is an 8A designated service, and the incumbent continuing to perform the work via bridge contract would go against the rules of the 8A program. That is the important reason offered by the DNF. And as everyone has admitted or conceded since the issuance of the DNF, that's just false. There's no such rule. A bridge contract could have gone to the incumbent. And I can tell you that defendant acknowledged this on page 1194 of the appendix during the hearing. And in the court's opinion at Appendix 5, the trial court also acknowledged that this is incorrect. So we have a shoddy at best DNF issued after the court ordered it to be issued that offers reasons that are exactly contrary to fact. That is, whether you apply the Rowley's factors or not, that is basically the definition of arbitrary and capricious under State Farm and Overton Park and other Supreme Court precedent. And so, you know, we have technical arguments as to mootness. These guys also have argued standing throughout. I have cases on standing that are presented in the briefs. I think that shouldn't be a question. But the bottom line is we have a variety of technical arguments to try to get this court not to review what is a clear, arbitrary, and capricious determination by DHS that significantly impacted people's rights. How far along are we in the appeal on the merits? Appellant's briefs are fully submitted. Appellee's briefs are imminent, I think, next week, something like that. So this case is going to be heard on the merits soon. At a minimum, what this court has to do is hear the issue on the merits. I think you guys will be very interested in that case. It involves some facts I'm sure you have not seen before. We're not you guys. I'm sorry, the court will be very interested. We're a court. And at the very minimum, we need this case to be reversed and remanded because we think it's still relevant to the relief we're going to ask for at the Court of Federal Claims on remand. We will save your rebuttal time if you like. I'll do that, thanks. Mr. Oliver. May it please the Court. Preliminarily, I just want to make a note that Intervenors' Counsel, who is sitting at the table here, intends to address standard of review and standing for four minutes. Let's begin with mootness. And you will leave him the four minutes. Yes, Your Honor, thank you. I want to start with mootness. This court does not have jurisdiction over this appeal because it's moot. It's moot because there is no live controversy. There is no relief that this court or the trial court can afford the appellants. Because what they see is a reinstatement of the SECA state, which expired on December 18, 2018, when GAO dismissed their bid process. Therefore, there is nothing that this court can do to effect relief. But they argue they're under the exception, capable of repetition, yet evading review. So just tell me how that's not true. Yes, that implies an exception. That only applies in exceptional circumstances, Your Honor, which are not the case here. One, it's not capable of repetition for several reasons. One, the issue of the override, the proprietive override, is really enmeshed in a determination of specific, unique, factual circumstances as they applied in this particular case. So unlike in Kingdomware, where the issue was the VA had a particular interpretation of the Rule of Two, and that was going to be the same interpretation for that particular petitioner, who had, unlike Safeguard, who had won several federal contracts, and therefore they had shown in that case that that particular petitioner was likely going to face that particular interpretation of the Rule of Two. That's not the case here. One, this agency has been around since 1975. There's never been an override. But even if that weren't the case, the idea that this particular petitioner would face another override is not something they can prove, and it's very speculative. So there's never been an override before by this agency, and this particular petitioner has never actually gotten a government contract. Yes, Your Honor, that's correct. So they cannot meet the high bar for purposes of establishing the evading review and capable of repetition. But in terms of potential harm, this company exists to try to get government contracts and then perform them. And, I mean, it stands to reason they're going to continue to bid on contracts. It stands to reason. And so the point is is they're going to keep bidding on contracts, and for the ones that they don't win, they might protest. And then if they protest, then there's a chance for an override during a GAO review. It's a long chain of possibilities, speculative possibilities. That's a far cry from what you saw in Kingdomware in which it was far more certain that you had a contractor who had— So as a practical matter then, any party that wants to challenge an override can never get judicial review? Is that fair to say? I mean, what would be the circumstances where a bid protester who is subjected to an incorrect, irrationally decided override succeeds in getting judicial review? I think it's difficult given the nature of the issues with respect to an override. The override is necessarily going to involve an issue on the APA, as we discussed in the merits portion of our brief, as to whether or not the override was arbitrary and capricious under 5 U.S.C. 705. So that is necessarily usually a fact-bound determination as to whether in this particular circumstance, what is the justification that the agency used? What's the rationale? What's the evidence in support of it? Is there any counter evidence? There are a whole host of things that a court will look at, fact-bound, to determine whether or not in a particular instance an override is proper or not. Again, to answer your question, it will be difficult precisely because the capable repetition component is going to be very difficult to be met because of the nature of the inquiry regarding overrides. I guess if a department issued some kind of memorandum that said, we're going to override every single time. Well, in that speculative world, if you had something closer to Kingdomware in which... And then the 100 days ran out, and then the person came up here and said, gee, this override is capable of repetition because this department has announced to the world, for whatever reason, that it's going to override every time. Right. In that scenario, that perhaps would be an example where it's closer to Kingdomware, where the issue is more the legality of that particular rule, which petitioners would face if they're going to do an override. But again, that's not the case here. There's no broad legal rule that would apply in multiple overrides. In essence, it's the APA standard review, arbitrary and capricious. Well, in fact, if we acquiesced in what the petitioner is requesting here, then wouldn't we allow every incumbent contractor almost always to block an override? Because if you think about it, if this person, under these circumstances, is capable of repetition and evading review, then any time an override took place, a bidder, especially if they were the incumbent, could come in, seek the stay, and then if the stay gets lifted, they could complain about the stay. And I can't see how any circumstance, if this one fits into the very narrow exception, I think everyone would, right, because every incumbent could always argue that. Yes. This is capable of repetition. Yes, Your Honor. That would be the exceptional circumstance that swallows the rule, and that can't be the case. The exception simply does not apply here. I sense that you have nothing further you wish to say. That's correct, Your Honor. All right. We'll hear from Mr. Iverson. May it please the Court. As Mr. Oliver mentioned, for the sake of efficiency, appellee B&O rests on its briefing on merits and mootness issues, and I will briefly address the standard of review and standing. The standard of review... Did the appellant address the standard of review in its opening argument? No, Your Honor. So if you address it, you open it up to their possibility of rebuttal, so you may do so at your peril. We'll rest on our briefs, Your Honor. Mr. Ginsburg, you have some rebuttal time. 341. Thanks, Your Honor. I just want to clarify a couple of things. We're talking about exceptions and rules. Let me be very clear about what the rule is. Here we're talking about CICA, that's the Competition and Contracting Act, and the automatic stay. That's the rule, and it's an important rule. It's something Congress took very seriously. Congress wanted to see bid protests at the GAO have some teeth, some impact, some importance. And there are limited exceptions to CICA, and that's exactly what we're talking about here. We're talking about urgent and compelling circumstances and best interests. So in terms of exceptions, swallowing rules, I think was the terminology I just heard, if this kind of DNF with clear errors issued after the fact is allowed to stand, and also arguably if this Court doesn't give the Court of Federal Claims some guidance as to the relevant factors for APA review, which is what the Riley's Wholesale Decision attempted to do. So just to be clear, when you keep saying after the fact, my facts here on my screen are the override occurred on September 30th and the DNF came out on October 2nd. You think that two-day period is just per se totally radically improper? Your Honor, and specifically the facts of this are that on Friday, which was I think September 28th perhaps, the agency announced for the first time its intent to kick out the incumbent contractor on Sunday over the weekend, and on that same Sunday, although obviously the Court of Federal Claims was closed, we moved for a TRO and preliminary injunction, which was heard Monday afternoon. Wait, we didn't move because we are here representing the petitioner. The incumbent moved, or did you move? No, the appellant moved. Oh, the appellant moved. I just wanted to make sure I was understanding. I'm sorry. By we, I mean the appellant. But you're correct in saying that the incumbent does have a clear economic interest and is part of the appellant, but the appellant moved, and by then the transition had already happened according to DHS, and the trial court relied on that representation, that the overnight Sunday transition had been effected, so the trial court denied the TRO, and then the fact of the inversion of the status quo was also extremely salient to the trial court in its decision. It said that there's going to be a significant harm to trying to undo that transition or undo B&O's performance. And so the fact is if the agency had abided by its statutory duty and given notice to GAO, we would have been in court asking for a TRO within hours and probably would have gotten it. So it was illegal because the DNF should have been before the override, right? Correct. Yeah, I got it now. And GAO needed notice, yeah. I didn't understand it before. I do now. But in any event, Your Honors, we've got a critical federal statute that Congress intended to have significant weight, and we have what can only be described as an extremely spotty DNF supporting a haphazard override decision. And that can't be the state of the law. And I'll address just a couple of other things. In terms of mootness and capable repetition in evading review, as Judge Chen said, we have a government contractor here that is going to continue to compete for contracts specifically at DHS, and we have the 49% owner of that entity, which is a longtime DHS contractor. And like I said before, if something isn't done about this DNF, I can almost guarantee that agencies will be emboldened to brazenly seek to override CICA stays. And with that, we will rest. Thank you, Your Honors. Thank you, Counsel. The case is submitted.